ROBERTS v. STATE.

No. 34559. Dec. 26, 1951.

Rehearing Denied Jan. 15, 1952.

*240 P. 2d 104.*

Tolbert & Gillespie, Hobart, and U. V. Jones, Snyder, for plaintiff in error.

J. Carpenter Hughes, Co. Atty., and Fred Cunningham, Asst. Co. Atty., and Carder & Carder, Hobart, and McLaury & McLaury, Snyder, for defendant in error.

HALLEY, V. C. J. This is a bastardy proceeding instituted in the county court of Kiowa county against Floyd Roberts, to establish the paternity of a child born out of wedlock to Louise Van Cleave on July 19, 1947. The complaint alleges that Floyd Roberts is the father of the child, alleged to have been born as the result of one of three acts of sexual intercourse occurring between these parties on October 12 and October 16, 1946, the exact date of conception being unknown to complainant.

The case was tried to a jury, which found the defendant "guilty", and after hearing, the court ordered Floyd Roberts to pay to Louise Van Cleave the sum of $5,250 for the support of her child during its minority, to be paid in monthly installments of specified amounts; and defendant has appealed. Floyd Roberts will be referred to herein as "defendant", the plaintiff as "the State", and Louise Van Cleave by name, or as "the complaining witness."

Defendant claims that his conviction is contrary to law and to the evidence, because the testimony of Louise Van Cleave is too improbable to warrant conviction. He also claims error in permitting the child to be identified and exhibited to the jury, and complains that instruction 10 fails to state the law correctly, gives undue prominence to certain matters, and instructs the jury on an issue not raised by the pleadings or by the evidence.

Early in June, 1945, Louise Van Cleave and the defendant had a date. They had known each other and had gone together occasionally since 1933. She testified that on June 10, 1945, defendant proposed marriage to her, that she accepted, and that they had sexual intercourse for the first time. From that day forward, they had many dates and acts of intercourse until October, 1946.

The court sustained the motion of defendant to require the State to state definitely the time and place of any act or acts of intercourse resulting in pregnancy. The State responded by naming October 12 and October 16, 1946, as the dates, and alleged that on October 12 an act of intercourse occurred in defendant's car in the yard of complainant's parents' home, and that the two acts occurring October 16 were in defendant's car at the side of the road in the vicinity of the community in which their parents resided. Defendant denied that he ever proposed marriage to or had sexual intercourse with the complainant at any time or place.

There is little dispute in the testimony except on the question of whether defendant proposed marriage and agreed to marry Louse Van Cleave, or had sexual intercourse with her. She alleged that he did these things, and he flatly denied any sexual intercourse or any proposal of marriage until three days before the trial of this case, when he admittedly offered to marry the complaining witness, and said he "would still marry her." This was after she had obtained a judgment against him for breach of promise, and that case was then pending on appeal. It was admitted that she refused this proposal of marriage on the ground that it was "too late."

The complaining witness testified that all three of the acts of intercourse with defendant which are claimed to be nearest the time of conception, being on October 12 and October 16, 1946, were had in the defendant's 1938 Chevrolet coupe with the doors closed. The width of the seat measured 51", and it was 28" from the panel to the back of the seat. Defendant was 6' 2" tall and weighed 195 lbs., and Louise Van Cleave was 5' 5" tall and weighed 145 or 150 lbs. It is contended that her testimony was so improbable and unreasonable that the verdict of the jury based thereon should be set aside. We cannot agree with this contention. The jury was permitted to view the car in the course of the trial.

Most of the cases cited by defendant are rape cases. Being criminal cases, a different rule of evidence is applicable. In Weston v. State, 77 Okla. Cr. 51, 138 P. 2d 553, a rape case, the court doubted the testimony of a child only eleven years of age and set aside the verdict based upon such testimony. Louise Van Cleave was about 29 years of age when she testified in this case. In Codapany v. State, 178 Okla. 61, 61 P. 2d 677, a bastardy proceeding, the rule was announced in the first syllabus as follows:

"Where there is competent evidence reasonably supporting, or tending to support, the verdict of the jury, the verdict and judgment based thereon will not be disturbed on appeal."

In Boston v. State, 182 Okla. 181, 77 P. 2d 13, it is said in the second syllabus:

"An action brought under section 8059, C.O.S. 1921 (10 Okla. St. Ann. §71) is in the nature of a civil action, and all that is required of the plaintiff is to prove the case by a fair preponderance of the evidence." (Citing Miller v. State, 156 Okla. 253, 10 P. 2d 697.

If any corroboration of the testimony of Louise Van Cleave is needed, we think it was furnished by the defendant himself when he testified that upon seeing the complaining witness a few days before the trial, "I offered to marry her, and still will." This was after the child was born, and she refused his offer of marriage on the ground that it was "too late." There are other cricumstances, such as the constant association of the parties, tending to corroborate her testimony. We think the verdict of the jury is amply supported by the evidence.

Defendant contends that the court erred in permitting the child to be exhibited to the jury. The following testimony gives a full account of what was done in this respect:

"(Counsel for the State) If the court please, we would like to bring in the child at this time and have it identified by the witness. (This was objected to and overruled, with exception.)

"Q. Louise, you now have the child in your arms, will you state to the court and jury who this child is? A. This is Marilee, my daughter.

"Q. The child to which you referred in your testimony this morning and just previous to the child's being brought into court? A. Yes, sir."

The cases of Ratzlaff v. State, 102 Okla. 263, 229 P. 278, and Lawhead v. State, 99 Okla. 197, 226 P. 376, are cited in support of defendant's contention and as announcing the rule that a child should not be exhibited to the jury unless it has settled features or other corporal indications which are likely permanent. In the Ratzlaff case, it was held that a child eleven months old was too young to have settled features, and in the fourth syllabus it was said:

"Rarely in a case should the court permit a child to be exhibited to the jury for the purpose of making its appearance evidence of its paternity, and in no case should this be done unless the child has reached that age and point of development where its features and corporal traits have become well and finally fixed and settled."

In the Lawhead case the court said, in the second syllabus:

"In the trial of a bastardy case, where the child is offered in evidence on the issue as to whether or not the defendant is the father, the sound rule is to admit the facts of similarity of specific traits, however presented, provided the child is, in the opinion of the trial court, old enough to possess settled features or other corporal indications."

In that case this court approved the exhibition of a child seven weeks old and permitted a witness to point out traits of resemblance between the child and its alleged father.

We think the better rule is that the question of whether a child should be exhibited to the jury should rest largely in the discretion of the trial court. In the case before us, there was no effort of the State to point out any resemblance between the child and the defendant. The child was born July 19, 1947. The trial was had in October, 1949, the child then being more than two years of age. Since no effort was made to point out any resemblance between the child and the defendant, we conclude that there was no error in permitting the child to be identified before the jury. It was said in Cudd v. State, 159 Okla. 87, 14 P. 2d 406, in the body of the opinion:

"Complaint is made because the child was permitted to be present while the mother of the complaining witness was upon the stand and to be identified as the child in question. There was no attempt made by the prosecution to exhibit the child to the jury and show paternity by alleged points of resemblance and appearance between the child and plaintiff in error, as was done in the Ratzlaff case, supra, and other similar cases relied on by plaintiff in error. . . . The mere presence of the child while the witness was testifying was not of itself prejudicial to the plaintiff in error when no comment was made by the prosecution upon its appearance."

Instruction 10, complained of by defendant, is so long that to include a verbatim copy would unnecessarily lengthen this opinion. The substance of this instruction is that the purpose of introducing evidence of complainant's association with Louis Revis, a married man, was to prove that about the time the child was begotten she had intercourse with Revis, and that the child was begotten by such intercourse; that the jury should weigh the evidence and determine whether or not it was sufficient to establish that Revis had sexual intercourse with complainant at about the time of conception; that from such finding it would not necessarily follow that it should find the defendant not guilty; that the State

must show by a preponderance of evidence that defendant is the father of the child; that if the jury found that both defendant and Revis had intercourse with the complaining witness, but was unable to find which of them was the father, then it must find the defendant not guilty.

When we consider the latter part of instruction 10, wherein the court told the jury that if it found by preponderance of the evidence that the complainant had had intercourse with both the defendant and Louis Revis, but was unable to tell which was the father of the child, then it must find the defendant not guilty, we are forced to the conclusion that this instruction was not prejudicial to the defendant. It is true that this instruction told the jury that testimony in regard to Louis Revis was injected only for the purpose of showing that he was the father of the child. The defendant's argument that such testimony was introduced solely for the purpose of showing that it caused a break in the friendly relations of Louise Van Cleave and the defendant is too improbable for serious consideration. Since only Revis and the defendant are shown to have associated with Miss Van Cleave at all near the time of conception, and since the defendant denied that he was the father of the child, it was only natural that the jury should infer that his introduction of evidence concerning Revis was for the purpose of showing that Revis was the father of the child. We conclude that there is no reversible error in the instruction given.

The judgment of the trial court is affirmed.

CORN, DAVISON, O'NEAL, and BINGAMAN, JJ., concur. WELCH, GIBSON, and JOHNSON, JJ., dissent.