497 P.2d 727

Wanda GLASCOCK, Plaintiff-Appellee,

v.

Johnnie ANDERSON, Defendant-Appellant.

No. 9357.

Supreme Court of New Mexico.

May 26, 1972.

726

Ahern, Montgomery & Albert, Malcolm L. Shannon, Jr., Albuquerque, for defendant-appellant.

Shipley, Durrett, Conway & Sandenaw, Alamogordo, for plaintiff-appellee.

## OPINION

OMAN, Justice.

Plaintiff brought suit to have defendant declared the father of her child born on March 31, 1970. Defendant denied paternity of the child, and this issue was tried to a jury on March 29, 1971. The jury found for plaintiff and judgment was entered on the verdict. Defendant appeals. We affirm.

The three points relied upon for reversal all relate to the presentation of the child before the jury for the apparent purpose of having the jurors observe similarities and dissimilarities between the features of defendant and the child. Defendant's objection was that:

> "* * * while there is a split in the decisions, we would ask this court, considering the age of the child and the lack of formation of features and the lack, at least to my knowledge, of any specific feature that may be indicative of paternity, any specific unusual characteristics that is had by this child and Mr. Anderson, that it would be prejudicial to us to present the child to the jury."

The jury view of the child lasted about thirty seconds and was followed by testimony of plaintiff that this was the child born to her on March 31, 1970, and which she claimed defendant had fathered.

This court has never passed upon the question of the propriety of presenting or exhibiting a child before the trier of the facts in a paternity suit for the purpose of having the child's features observed and compared with those of the alleged father. However, it has long been the practice in some, if not in all, of our district courts to permit the trier of the facts to view the child and to also hear testimony as to asserted resemblances or lack of resemblances between both the specific features and the features generally of the child and the claimed father.

A reference to the decisions from other jurisdictions in which this question has been presented and decided compels our agreement with defendant that "there is a split in the decisions." They are sharply and seemingly hopelessly divided as to when and if the child may properly be viewed by the trier of the facts; as to whose testimony, if that of anyone, is competent on the question of likeness or unlikeness of appearance between the child and the purported father; and as to whether the evidence concerning resemblance or lack of resemblance—whether the evidence be in the form of observations of the child and the alleged father by the trier of the facts, or testimony as to resemblances or differences between them—must be confined to individual features, or specific traits less than an individual feature, or whether it may embrace general resemblances, resemblances as to individual features and resemblances as to specific traits less than an individual feature. See Flores v. State, 72 Fla. 302, 73 So. 234 (1916); Almeida v. Correa, 51 Hawaii 594, 465 P. 2d 564 (1970); In re Stone's Estate, 77 Idaho 63, 286 P.2d 329 (1955); Merritt v. Leuck, 231 Iowa 777, 2 N.W.2d 49 (1942); Green v. Commonwealth ex rel. Helms, 297 Ky. 675, 180 S.W.2d 865 (1944); Clark v. Bradstreet, 80 Me. 454, 15 A. 56 (1888); Roberts v. State, 205 Okl. 632, 240 P.2d 104 (1951); Boston v. State ex rel. Mayberry, 182 Okl. 181, 77 P.2d 13 (1938); State ex rel. Fitch v. Powers, 75 S.D. 209, 62 N.W.2d 764 (1954); Cook v. State, 172

Tenn. 42, 109 S.W.2d 98 (1937); State v. Anderson, 63 Utah 171, 224 P. 442, 40 A.L.R. 94 (1924); Beattie v. Traynor, 114 Vt. 495, 49 A.2d 200 (1946); State v. Forbes, 108 Vt. 361, 187 A. 422 (1936); Hanawalt v. State, 64 Wis. 84, 24 N.W. 489 (1885); State v. Cabrera, 13 Ariz.App. 527, 478 P.2d 142 (1970); Berry v. Chaplin, 74 Cal.App.2d 652, 169 P.2d 442 (1946); Morris v. Stanford, 58 Ga.App. 726, 199 S.E. 773 (1938); Hall v. Centolanza, 28 N.J.Super. 391, 101 A.2d 44 (App.Div. 1953); Yerian v. Brinker, 35 N.E.2d 878 (Ohio App. 1941); 1 J. Wigmore, Evidence, § 166 (3d Ed. 1940).

By his first and second points relied upon for reversal, defendant urges upon us the adoption of (1) a rule prohibiting the presentation of a child before the trier of the facts in all paternity cases, except perhaps when questions of race or color are involved [See generally to this effect Almeida v. Correa, supra; Cook v. State, supra; Hanawalt v. State, supra; In re Wendel's Estate, 146 Misc. 260, 262 N.Y.S. 41 (Sup.Ct.1933); Bilkovic v. Loeb, 156 App.Div. 719, 141 N.Y.S. 279 (1913)], or (2) a rule, as advocated in 1 J. Wigmore, supra, that the child may be exhibited to the trier of the facts if, in the discretion of the trial court, the child is old enough to possess settled features [See generally to this effect Flores v. State, supra; Boston v. State ex rel. Mayberry supra; State ex rel. Fitch v. Powers, supra; State v. Anderson, supra; Lohsen v. Lawson, 106 Vt. 481, 174 A. 861 (1934); 1 J. Wigmore, supra at 627].

■ We reject both of these rules and adopt the rule that a child may properly be presented or exhibited to the jury for the purpose of having the jury observe the resemblances or lack of resemblances between the child and the alleged father. In accord see Green v. Commonwealth ex rel. Helms, supra; Berry v. Chaplin, supra; Yerian v. Brinker, supra. The age of the child goes to the weight to be accorded the comparison of features and not to the admissibility thereof. Green v. Commonwealth ex rel. Helms, supra; State v. Ca-

brera, supra. Jurors are as capable as the average trial judge to decide whether the features of the child are sufficiently settled to support a finding of similarity or dissimilarity between its features and the features of the alleged father. Green v. Commonwealth ex rel. Helms, supra. We also are of the opinion that jurors are generally informed as to the changes in features and traits which occur in children during the early months and years of their lives, and have the capacity to properly relate the age, features and traits of a child in the process of comparing the child's appearance with that of the claimed father. We are not nearly so impressed, as some other courts appear to be, that jurors are so emotionally excited by the appearance of a child exhibited before them that their sympathies for the child replace their intelligence and the obligation of their oath, and they thereupon base their decision as to the paternity of the child solely on emotion and an imagined likeness between the child and the alleged father.

■ We do, however, feel that the comparisons between the child and the claimed father should be limited to individual features and specific traits, and should not include any fancied general resemblance between them. In accord see 1 J. Wigmore, supra at 626–27; Flores v. State, supra; State v. Anderson, supra. Expert testimony, if offered, should be admitted to identify resemblances or differences in individual features and specific physical traits less than a single feature as discussed in Almeida v. Correa, supra. We do not agree, however, with the Hawaii court that resemblance can properly be discerned only between specific traits and not as between individual features. Nor do we agree that only experts are qualified to inform the jury of significant resemblances and differences between a claimed father and child. Any relevant evidence, whether by way of expert opinion, by way of comparisons of features and traits made by the jury from observations of the features and traits of the child and the features and traits of the purported fa-

ther, or by way of testimony of persons in a position of advantage to observe and draw comparisons between the features and traits of the child and those of the alleged father, should be admitted, and the trier of the facts should then decide as to the credibility of the witnesses and the different items of evidence received and as to the weight to be given each item of evidence.

■ It is true the jury was not instructed to confine its comparisons to individual features or specific traits, but no such request was made by either side. Thus, it was not reversible error for the court to fail to so instruct the jury. Rule of Civil Procedure 51, subd. 1(i) [§ 21–1–1(51) subd. 1(i), N.M.S.A.1953 (Repl.Vol. 4, 1970)]. The objection by defendant to presenting the child to the jury in no way suggested that the jury should be instructed or cautioned to consider and compare only observable individual features or specific traits less than an individual feature, and we do not understand defendant to so contend.

In his third point relied upon for reversal, defendant contends the presentation or exhibition of the child before the jury was prejudicial because "no proper foundation was laid." His position is that the exhibition of the child to the jury should have been preceded by a foundation consisting of a showing of "specific features or unusual characteristics" in the child which would indicate paternity by defendant. He relies upon Hassler v. District of Columbia, 122 A.2d 827 (Mun.App.D.C.1956), rev'd, on other grounds, 99 U.S.App.D.C. 188, 238 F.2d 264 (1956).

■ It is obvious defendant's objection to the exhibition of the child before the jury was not directed at any failure to lay the foundation for which he now argues. In any event, this foundation is not an essential to the exhibition of a child to a jury under the rule we adopt. It is for the jury to make determinations as to resemblances or differences between the individual features and specific traits of the child and the alleged father. The jury may be assisted in making these determinations by other relevant evidence as discussed above, but the observation of the child by the jury is not dependent upon a preliminary showing of specific features, traits or unusual characteristics indicative of paternity which defendant now urges upon us.

The judgment should be affirmed.

It is so ordered.

COMPTON, C. J., and MONTOYA, J., concur.

STEPHENSON, Justice (dissenting).

While agreeing with much said by the majority, I do not concur in the result reached.

I agree that the precedents are in hopeless conflict. Respectable authority is readily available for any position which we might adopt. Courts, apparently including this one, find this a difficult problem with which to grapple. This being a case of first impression, we are free to adopt a position which most nearly comports with reason and justice. I would adopt a rule prohibiting presentation of a child before a jury except perhaps where questions of race or color are involved. No such questions are involved here.

In my view, the display of an infant to demonstrate a supposed resemblance to the putative father does not rise to the stature of evidence. Rather, is an injection of speculation and conjecture regarding real or fancied resemblances existing in the eye of the beholder with a dash of old wives' tales in lieu of any basis in fact, scientific or otherwise. If such conjecture emanated from the lips of a witness it would clearly be objectionable. And in the circumstances under discussion, the vice is more insidious in that, instead of emanating from a witness, it is generated in the minds of the jury or court.

I heartily agree with the rejection by the majority of the "settled features" rule which is espoused by Mr. Wigmore and

prevails in many states. Such a rule, by interposing the judge between the child and the jury, raises speculation to the second power.

I recognize that the majority would not permit such displays to demonstrate fancied general resemblance, but would rather limit them to individual features and specific traits. Aside from the question of how the jury's mind is to be riveted to individual features and specific traits to the exclusion of fancied general resemblance when the infant is displayed, and assuming a definite resemblance of an individual feature or a specific trait, what, I inquire, has been proven?

Even if we then further assume that the trier of the facts is fully informed as to the workings of Mendel's law of genetics and the functioning and interplay of the genes of the parents in relation to such feature or trait (knowledge which would apparently place the jury head and shoulders above authorities in the field) we are still left, under the hypothetical assumptions stated, with a mere possibility that the putative father is the father. I do not regard such a possibility as being evidence.

Bearing on the question of policy as to which position we should adopt are difficulties which could well confront us in the appellate process. For example, let us suppose that a paternity case in which the child is displayed to a jury is appealed, and:

A. There is no substantial evidence of paternity in the record, unless it arises from the display, or

B. The evidence of neither party preponderates, unless the scales are tilted by the display, or

C. A display is tendered by one party; the other objects on the grounds that no resemblance exists; the objection is overruled; the display is permitted and on appeal the ruling is attacked as erroneous.

How can an appellate court deal with such problems? How can the rights of the parties be protected on appeal?

Inasmuch as this is a mere dissent, it scarcely seems worthwhile to discuss the authorities at length. Suffice it to say that a recent case which is persuasive to me and which sets forth my views is Almeida v. Correa, 51 Hawaii 594, 465 P.2d 564 (1970). I consider that case to be a well-reasoned review, not only of the diverse rules applied by the courts in various jurisdictions, but also an interesting and learned discussion of some of the scientific considerations in the fields of heredity and genetics. That case concludes:

"In sum, we agree that the specific resemblance between a child and the person alleged to be the father is a relevant issue in a paternity case but we cannot find any rule of reason, any policy of the law of evidence, or any fact of science which provides a basis for allowing the exhibition of a child to show resemblance. As we have stated, a jury gains nothing from an exhibition even when their attention is focused upon the relevant inherited traits since independent expert interpretation is required. An exhibition can only serve to expose the defendant to proven dangers. Therefore, we hold that the exhibition of a child to the finder of fact in a paternity case is not to be permitted. However, expert testimony concerning the resemblance of a child to the person alleged to be the father is admissible to prove or disprove the paternity of the child."

For the reasons I have given, I respectfully dissent from the result reached by the majority in this case.

McMANUS, J., concurs.